Ronald L. Davison (266481971)
Starr, Gern, Davison & Rubin, P.C.
105 Eisenhower Parkway, Suite 401
Roseland, NJ 07068-1640
Tel: 973-403-9200 Ext. 226
Fax: 973-226-0031
Email: rdavison@starrgern.com

Jacob Sommer (*pro hac vice* forthcoming)
ZwillGen PLLC
1900 M Street NW, Suite 250
Washington, DC 20036
Tel: 202-706-5205
Jake@zwillgen.com

*Attorneys for Defendant People Data Labs, Inc.*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as an assignee of individuals who are Covered Persons,* JANE DOE-1, *a law enforcement officer,* JANE DOE-2, *a law enforcement officer*, SCOTT MALONEY, JUSTYNA MALONEY, PETER ANDREYEV, and WILLIAM SULLIVAN, <br><br> Plaintiffs, <br><br> v. <br><br> PEOPLE DATA LABS, INC., RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities, <br><br> Defendants. | CASE NO. <br><br> **NOTICE OF REMOVAL** |

## D.N.J. LOCAL RULE 10.1 STATEMENT

Plaintiffs are Atlas Data Privacy Corporation, Jane Doe-1, Jane Doe-2, Scott Maloney, Justyna Maloney, Peter Andreyev, and William Sullivan. Atlas Data Privacy Corporation is

located at Five Greentree Centre, 525 Route 73, Suite 104, Marlton, New Jersey 08053. The remaining Plaintiffs' addresses are unknown to defendant People Data Labs Inc. ("PDL"). Plaintiffs are represented by Rajiv D. Parikh, Esq. and Kathleen Barnett Einhorn, Esq. of Genova Burns LLC, 494 Broad Street, Newark, NJ 07012, and John A. Yanchunis, Esq. of Morgan & Morgan, 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

Defendant PDL has an address at 156 Fifth Avenue #1200, New York, NY 10010, but its principal place of business is in California. *See* **Exhibit C**, Declaration of Sean Thorne in Support of Notice of Removal ("Thorne Declaration") ¶ 4. PDL is represented by Ronald L. Davison of Starr, Gern, Davison & Rubin, P.C. and Jacob Sommer of ZwillGen PLLC.

**TO THE CLERK OF THE ABOVE-TITLED COURT, PLAINTIFFS, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant PDL, through undersigned counsel, hereby files this Notice of Removal to remove the above-captioned action—reserving all defenses and rights—from the Superior Court of New Jersey, Monmouth County, to the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. The grounds for removal are as follows:

**PROCEDURAL BACKGROUND**

1. On February 8, 2024, Plaintiffs Scott Maloney, Justyna Maloney, Peter Andreyev, William Sullivan, and Jane Does 1 and 2 ("Individual Plaintiffs") filed a complaint ("Complaint") against PDL in the Superior Court of New Jersey, Monmouth County asserting violations under Daniel's Law, P.L. 2023, c. 113, N.J.S.A. 56:8-166.1 ("Daniel's Law"). *See* **Exhibit A** (containing the Complaint ("Compl.")), Compl. ¶ 24. Atlas Data Privacy Corporation is also a plaintiff, purportedly as the assignee of "approximately 18,976" individuals who are allegedly covered

persons under Daniel's Law ("Unidentified Covered Persons"). The action is captioned *Atlas Data Privacy Corp. v. People Data Labs, Inc.*, Docket No. MON L-000515-24.

2. Atlas recruited the Individual Plaintiffs and Unidentified Covered Persons to use its services to send suppression requests to various businesses and websites under Daniel's Law. Compl. ¶¶ 30-32. The Individual Plaintiffs and Unidentified Covered Persons allegedly sent such requests "[s]tarting on or about December 26, 2023." *Id.* ¶ 49.

3. On February 22, 2024, Plaintiffs served PDL through its registered agent with the Complaint. *See* **Exhibit B**, Affidavit of Service on PDL.

## LEGAL STANDARD

4. Diversity jurisdiction exists when the action is between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

5. A notice of removal requires only "a short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), that contains "plausible allegation[s]" that jurisdiction exists. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014); *see also Farrell v. FedEx Ground Package Sys., Inc.*, 478 F. Supp. 3d 536, 540 (D.N.J. 2020). The notice "need not contain evidentiary submissions," *Dart Cherokee*, 574 U.S. at 84, and the Court "should accept a removing defendant's allegations" unless contested by the plaintiff or questioned by the Court, *Farrell*, 478 F. Supp. 3d at 540 (citing *Dart Cherokee*, 574 U.S. at 87). If plaintiffs contest the factual basis for removal, a defendant is entitled to discovery about whether diversity jurisdiction exists. *See, e.g.*, *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 102 (3d Cir. 2015); *City of New York v. Permanent Mission of India to the United Nations*, 446 F.3d 365, 367-68 (2d Cir. 2006) (same); *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 625-26 (1st Cir. 2001) (jurisdictional discovery should be granted liberally if there is a "colorable case" for federal jurisdiction).

## THIS COURT HAS DIVERSITY JURISDICTION

6. Removal is proper because diversity jurisdiction exists and because all other requirements for removal have been satisfied. Diversity jurisdiction exists under 28 U.S.C. § 1332(a) because: (i) there is complete diversity of citizenship between PDL and the Individual Plaintiffs; (ii) Atlas's citizenship can and should be disregarded for purposes of diversity jurisdiction; (iii) the amount in controversy exceeds $75,000.

### Diversity of Citizenship

7. This action satisfies the complete diversity requirement. *See* 28 U.S.C. § 1332(a)(1); *Strawbridge v. Curtiss*, 7 U.S. 267 (1806); *Lincoln Benefit Life Co.*, 800 F.3d at 104.

8. **PDL's Citizenship.** PDL is organized under the laws of Delaware with its principal place of business in California. *See* **Exhibit C**, Thorne Declaration ¶ 4. PDL is thus a citizen of Delaware and California for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1).[1]

9. **Citizenship of the Individual Plaintiffs.** The Individual Plaintiffs are each current or former New Jersey law enforcement officers, and are alleged to be living or working in New Jersey currently. Plaintiffs Jane Doe-1, Jane Doe-2, Scott Maloney, and Justyna Maloney are all police officers in New Jersey. Compl. ¶¶ 15-17. The Maloneys allegedly serve with the Rahway, New Jersey Police Department and live in New Jersey with their children. *Id.* ¶ 17. Plaintiff Peter Andreyev is a "32-year veteran" of the Point Pleasant, New Jersey Police Department and is currently an officer in the New Jersey State Policemen's Benevolent Association. *Id.* ¶ 21. And

---

[1] Plaintiffs also named fictitious individuals and companies as defendants. But "[i]n determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1). *See also, e.g., Dozier v. E. Mfg. Corp.*, 2020 WL 3068191, at *1 (D.N.J. June 8, 2020).

3

Plaintiff William Sullivan is a longtime officer with the New Jersey Department of Corrections who, since 2020, has served as the president of New Jersey PBA Local 105, a labor union representing thousands of New Jersey correctional officers.  *Id.* ¶ 22.

10.    In New Jersey, "[e]very member of a police department and force shall be a resident of the State of New Jersey while serving in such position."  N.J.S.A. 40A:14-122.8.[2]  Based on that requirement, and the complaint's other allegations, there is no reason to believe each Individual Plaintiff is not a citizen of New Jersey.

11.    **Atlas's Citizenship.**  Atlas is a Delaware corporation with its principal place of business in New Jersey.  Compl. ¶ 23.  But Atlas's citizenship should be disregarded because the record strongly suggests Atlas was created solely as a litigation vehicle, without any preexisting nexus to the allegations here, and was assigned thousands of individuals' claims in a collusive and improper attempt to defeat federal jurisdiction.  Federal courts disregard an assignee's citizenship under these circumstances.

12.    Atlas appears to have been incorporated in Delaware in April 2021, not long after New Jersey passed Daniel's Law.[3]  In 2023, Plaintiffs' counsel, Genova Burns, registered in New Jersey to lobby on Atlas's behalf.  *See* **Exhibit D** at 5, Annual Report of Governmental Affairs Agent.  And in July 2023, Daniel's Law was amended specifically to include an assignment provision.  *See* N.J.S.A. 56:8-166.1(b), (d); NJ LEGIS 113 (2023), 2023 NJ Sess. Law Serv. Ch.

---

[2] The statute does not define residency, but another New Jersey statute, N.J.S.A. 52:14-7(a), requiring other state officers (some of whom are covered by Daniel's Law) to have a principal residence in New Jersey defines "principal residence" as "the state (1) where the person spends the majority of the person's nonworking time, and (2) which is most clearly the center of the person's domestic life, and (3) which is designated as the person's legal address and legal residence for voting."  *Id.*

[3] *See* "Atlas Data Privacy Corporation," File Number 5874663, https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx

4

113 (SENATE 3125) (West). Presumably after that, the Unidentified Covered Persons assigned their claims to Atlas. *See* Compl. ¶ 24. Soon after, on January 12, 2024, Atlas registered to do business in New Jersey[4] and, mere weeks later, sued PDL and dozens of other companies.[5] Atlas now purports to assert claims against PDL as an assignee on behalf of "approximately 18,976" covered persons under Daniel's Law.

13. The Complaint does not explain how or why nearly 20,000 people would assign, even in part, legal claims for compensatory and punitive damages to Atlas, an email platform that sends opt out requests under Daniel's law. Compl. ¶¶ 30-32. It strains credulity to suggest that anyone, let alone the many thousands of individuals here, would give up these purportedly valuable rights to a third party simply to use an email service.

14. The assignments plainly were not necessary for the Unidentified Covered Persons to attempt to seek relief under Daniel's Law. Although Daniel's Law permits assignments of claims (likely as a result of Atlas's own lobbying), it also provides for individual lawsuits. And class actions exist to expedite collective litigation of claims by multiple plaintiffs. Either type of lawsuit would have been subject to federal jurisdiction: individual actions on behalf of New Jersey police officers against non-New Jersey companies would satisfy the complete diversity requirement for jurisdiction, along with the amount-in-controversy requirement (*see infra*), and a class action based on the facts alleged here would have been subject to federal jurisdiction under

---

[4] *See* "Atlas Data Privacy Corporation," Entity ID 0451071286; https://www.njportal.com/DOR/BusinessNameSearch/Search/BusinessName.

[5] That is, Atlas registered to do business in New Jersey *after* Plaintiffs allegedly sent notices to PDL requesting removal of their information and allegedly received no response. *See* Compl. ¶ 49. Atlas's decision to do so makes plain that it exists solely to obtain collusive assignments to defeat federal jurisdiction.

5

the Class Action Fairness Act, 28 U.S.C. § 1332(d). Against the backdrop, the assignment of nearly 20,000 claims to Atlas, a Delaware corporation, smacks of a strategic, collusive effort to defeat federal jurisdiction.

15. Courts are skeptical of attempts to artificially create or destroy federal jurisdiction. Assignments to create or destroy diversity "should be analyzed under the same standard; that is, the issue of whether the assignment was improperly or collusively made is to be resolved as a simple question of fact." *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 182, 186 (5th Cir. 1990) (disregarding an entity's citizenship when it had "no legitimate and independent interest in the litigation, but was simply providing litigation support services on a contingent fee arrangement at the behest of the appellants' attorney"). *See also Att'ys Tr. v. Videotape Comput. Prods., Inc.*, 93 F.3d 593, 595 (9th Cir. 1996) ("A plaintiff may attempt to create or destroy diversity jurisdiction by making a transfer which is an assignment in name only. In either case, the plaintiff tampers with the jurisdiction of the court by artificially affecting it.").[6] *Accord Erie Ins. Exch. v. Erie Indem. Co.*, 68 F.4th 815, 820 (3d Cir. 2023) (explaining that when parties attempt to manipulate jurisdiction, courts "look beyond the four corners of a complaint" and independently consider the

---

[6] *See also NPD Mgmt. and Bldg. Servs., Inc. v. Geismar N. Am., Inc.*, 2021 WL 5231870, at *3 (E.D. La. Nov. 10, 2021) ("[A] plaintiff may not make a 'collusive' partial assignment of its interests in the subject matter of litigation to destroy valid diversity jurisdiction and to prevent the removal of an action to federal court."); *Cambridge Place Inv. Mgmt, Inc. v. Morgan Stanley & Co.*, 813 F. Supp. 2d 242, 244 (D. Mass. 2011) (ordering jurisdictional discovery on assignments because the court "must examine and disregard an assignment 'if it be found to have been made principally to defeat removal'") (citing *JMTR Enters., LLC v. Duchin,* 42 F. Supp. 2d 87, 93 (D. Mass. 1999) (court ignored the citizenship of the assignee who was assigned claims in an attempt to destroy diversity jurisdiction)); *3BTech, Inc. v. Wang*, 534 F. Supp. 3d 973, 985 (N.D. Ind. 2021) (dismissing claim for lack of subject matter jurisdiction when plaintiff collusively assigned claim to a diverse defendant in order to establish federal diversity jurisdiction); *Renaissance Mktg., Inc. v. Monitronics Int'l, Inc.,* 606 F. Supp. 2d 201, 208 (D.P.R. 2009) ("District courts will not allow removal jurisdiction to be defeated by the plaintiff's destruction of complete diversity of citizenship by the collusive or improper joinder of parties or the assignment of claims.") (cleaned up).

"factual predicates . . . for [the court's] subject matter jurisdiction"), *cert. denied sub nom. Erie Indem. Co. v. Erie Ins. Exch.*, No. 23-434, 2024 WL 759808 (U.S. Feb. 26, 2024) (Mem).

16. Federal law likewise prohibits such gamesmanship. District courts lack jurisdiction, for example, when "any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359. Although Section 1359 addresses collusive attempts to *create* diversity jurisdiction, the same principles should apply when Plaintiffs use collusive assignment to defeat jurisdiction. *See Att'ys Tr.*, 93 F.3d at 595.[7]

17. In short, the Complaint, and the events leading up to its filing, reveal that Atlas has been assigned nearly 20,000 covered persons' claims and joined as a plaintiff here only to defeat federal jurisdiction. That strategy is a transparent attempt to convert a class action, which would have been subject to this federal CAFA jurisdiction, into a civil action by a Delaware corporation, designed to prevent removal of the action by another Delaware corporation. It is difficult to conceive of any reason for thousands of covered persons to assign apparently valuable Daniel's Law claims to an entity like Atlas other than to manipulate jurisdiction. The Court should therefore disregard Atlas's citizenship in determining whether complete diversity exists.

18. As for the thousands of Unidentified Individual Plaintiffs whose claims have allegedly been assigned to Atlas, all are alleged to be "covered persons" under Daniel's Law, and

---

[7] The Complaint does not state explicitly whether the claims were partially or completely assigned to Atlas. But the allegations suggest the claims were only partially assigned, with the assignors retaining some rights, because the Complaint requests relief on behalf of covered persons that would not benefit Atlas. *See* Compl., Prayer for Relief. In any event, courts scrutinize assignments designed to defeat federal jurisdiction when faced with both complete and partial assignments. *Atty's Tr.*, 93 F.3d at 596-97; *First Nat'l Bank v. Warner Bros. Ent., Inc.*, 2009 WL 10671378, at *4 (C.D. Cal. July 10, 2009) (distinction between complete and partial assignments "is ultimately a non-starter because 'even when there is a complete assignment, collusion may be found' if 'there is an excellent opportunity for manipulation'") (quoting *Atty's Tr.*, 93 F.3d at 596-97).

thus are likely to be citizens and residents of New Jersey. *See* N.J.S.A. 40A:14-122.8; N.J.S.A. 52:14-7(a). And nothing in the complaint provides a reason to believe that any of the Unidentified Individual Plaintiffs are citizens of Delaware or California.

19. PDL is a citizen of Delaware and California. *See* **Exhibit C**, Thorne Declaration ¶ 4. Once Atlas's citizenship is properly disregarded, all other Plaintiffs are citizens of New Jersey. Accordingly, complete diversity of citizenship exists under 28 U.S.C. § 1332(a)(1).

20. To the extent the Court has questions regarding diversity of citizenship, the remedy is not to remand the case but to permit PDL to take discovery regarding Atlas's claim assignments, including the scope of those assignments. That discovery will inform an analysis of the *Grassi* factors governing whether an assignment was collusive: the size of the interest assigned, whether the assignee had any interest in the matter before assignment, whether the assignor and assignee had separate counsel, whether the assignee's attorney is controlling the litigation, the timing of the assignment, whether the assignment could be considered a sort of contingent fee arrangement, and whether there was a strong likelihood of prejudice against the defendant. *See Grassi*, 894 F.2d at 186; *Cambridge Place*, 813 F. Supp. 2d at 244 (ordering jurisdictional discovery on assignments because the court "must examine and disregard an assignment if it be found to have been made principally to defeat removal") (cleaned up).

### The Alleged Amount in Controversy Exceeds $75,000

21. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).

22. Only one plaintiff must have claims exceeding $75,000 for this Court to exercise diversity jurisdiction; supplemental jurisdiction exists under 28 U.S.C. § 1367 over other plaintiffs' claims. *See Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 549 (2005); *see also*

8

*Burgess v. Bennet*, 2021 WL 1050313, at *5 n.9 (D.N.J. Mar. 19, 2021) (exercising jurisdiction over all plaintiffs' claims when one plaintiff met the jurisdictional threshold).

23. The analysis begins with the Complaint's allegations. When the Complaint does not specifically state the amount in controversy, "the defendant's notice of removal may do so." *Dart Cherokee*, 574 U.S. at 84; *see also Erie Ins. Exch. v. Erie Indem. Co.*, 722 F.3d 154, 158 (3d Cir. 2013). No evidentiary submissions are necessary to establish the amount in controversy. *Dart Cherokee*, 574 U.S. at 84; *see also Yucis v. Sears Outlet Stores, LLC*, 813 F. App'x 780, 782 n.2 (3d Cir. 2020) (when "the plaintiff's complaint does not include a specific monetary demand, the removing defendant need only 'plausibl[y] alleg[e]' the amount in controversy").

24. Plaintiffs' complaint seeks actual or liquidated damages of at least $1,000 per "violation" of Daniel's Law, punitive damages, temporary and permanent injunctive relief, and attorneys' fees—all based on PDL's alleged failure to fulfill the suppression requests as required by Daniel's Law. Compl., Prayer for Relief. Although these allegations are meritless, and PDL denies any liability, for purposes of this Notice of Removal, taking Plaintiffs' allegations as true and correct, the "possible" amount in controversy readily exceeds $75,000.

25. Atlas's claims satisfy the $75,000 threshold. Atlas purports to assert claims on behalf of 18,976 covered persons under Daniel's Law, each of whom claims at least $1,000 per "violation" of the statute. Assuming even a single "violation" per individual, Atlas seeks damages of approximately $19 million.

26. Atlas's claims can be considered in the aggregate, even if its citizenship is ignored when determining diversity. Diversity of citizenship is a separate inquiry from determining the amount in controversy. *Cf. Exxon Mobil Corp.*, 545 U.S. at 562 (explaining the distinct justifications for the complete-diversity and amount-in-controversy requirements and observing

that the latter is "meant to ensure that a dispute is sufficiently important to warrant federal-court attention"). Allowing Atlas to aggregate claims collusively to defeat citizenship but argue against aggregating the alleged damages would only exacerbate the effects of collusive assignment. The lynchpin is the allegations in the Complaint regarding the assignment, which PDL must take as true in seeking removal (but may later dispute). As alleged, Atlas is one plaintiff with a multimillion-dollar claim, far in excess of the jurisdictional threshold.

27.  Regardless, even setting Atlas aside, the "possible" amount in controversy for each of the Individual Plaintiffs' claims, as alleged, likewise exceeds $75,000. Each individual plaintiff seeks (1) "actual damages, not less than the liquidated damages under Daniel's Law, at '$1,000 for each violation,'" (2) "an additional amount in punitive damages, to be determined by the Court, for 'willful noncompliance' as allowed under Daniel's Law," (3) "reasonable attorneys' fees," and (4) "injunctive relief." Compl., Prayer for Relief. When the Court considers potential statutory, actual, and punitive damages, as well as the value of injunctive relief and attorneys' fees, each Plaintiff has put far more than $75,000 in controversy.

28.  Although PDL vigorously disputes the allegations and Plaintiffs' entitlement to such relief, as pleaded, the Complaint seeks $1,000 per violation for an unspecified number of "violations" for each plaintiff. It is "possible" that the amount in controversy involves multiple alleged violations per Plaintiff because Plaintiffs allege that (i) protected information for the Individual Plaintiffs "remains disclosed" on websites allegedly owned by PDL (Compl. ¶ 61); and (ii) "each" failure to "cease the disclosure or re-disclosure" of that information "constitute[s] a separate violation under the law," *id.* ¶ 59. If Individual Plaintiffs succeed in showing multiple

violations, statutory damages alone could cross the $75,000 threshold for each Individual Plaintiff.[8]

29. The Complaint also seeks actual damages. Several Individual Plaintiffs allege that they have received death threats (Compl. ¶¶ 15, 16, 19). If they intend to allege that pain and suffering from those or similar threats are actual damages attributable to and recoverable as a result of violations of Daniel's Law, those damages could well exceed $75,000. *See, e.g., Yucis*, 813 F. App'x at 782 n.2 (plaintiff plausibly alleged more than $75,000 in controversy based on allegations that she experienced "pain, suffering, embarrassment, and humiliation" as a result of sexual harassment, as well as incurred attorneys' fees).

30. The Complaint also seeks punitive damages for "willful noncompliance" with the law. Compl., Prayer for Relief. Each Individual Plaintiff seeks such damages, and presumably Atlas seeks them separately for each of the Unidentified Covered Persons. Although PDL denies that Plaintiffs are entitled to such damages, punitive damages claims made in good faith "will generally [alone] satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum." *Huber v. Taylor*, 532 F.3d 237, 244 (3d Cir. 2008); *see also Ifill v. CVS Pharmacy,* 2021 WL 486884, at *2

---

[8] The Complaint does not explain its per-violation theory of damages, for example, by specifying how many violations the Individual Plaintiffs claim due to the alleged "ongoing" exposure of their personal information. PDL disputes any interpretation of Daniel's Law that would allow a single plaintiff to recover statutory damages for "multiple violations" of the law. Nonetheless, because no court has ruled on the issue, because the statutory language does not directly address the issue, and because Plaintiffs apparently intend to litigate the case as though an individual covered person may assert multiple "violations" of the statute based on a single suppression request, the potential for additional violations per person should be considered in determining the amount in controversy. *See, e.g., Peatry v. Bimbo Bakeries USA, Inc.,* 393 F. Supp. 3d 766, 768–70 (N.D. Ill. 2019) (finding removal proper when a complaint asserted violations of the Illinois Biometric Privacy Act because plaintiff did not show that recoverable amount based on "per violation" theory was "legally impossible").

& n.3 (D.N.J. Feb. 9, 2021) (denying motion to remand on grounds that the plaintiff's request for punitive damages satisfied the amount in controversy requirement, because, even assuming a single-digit multiplier, a plaintiff would only need to recover compensatory damages above $7,500 to bring the total amount above $75,000 and, in any event, "[i]t is possible that a jury could also reasonably award a higher multiplier"). This is especially true in New Jersey, where any plaintiff seeking punitive damages is entitled to request up to "five times the liability of th[e] defendant for compensatory damages *or $350,000, whichever is greater*." N.J.S.A. 2A:15-5.14(b) (emphasis added). Accordingly, the mere fact that the Individual Plaintiffs are seeking punitive damages presumptively satisfies the $75,000 jurisdictional amount for each Individual Plaintiff. *See, e.g.*, *Valenta v. BI Inc.,* 2021 WL 7185785, at *5 (W.D. Pa. Oct. 8, 2021) ("Because Plaintiff's request for punitive damages is appropriately made, this is generally sufficient to satisfy the amount in controversy."), *R&R adopted*, 2022 WL 580930 (W.D. Pa. Feb. 25, 2022).

31. The Complaint also seeks "reasonable attorneys' fees." The Third Circuit has held that Courts "must consider potential attorneys' fees" in determining the amount in controversy if the cause of action, like Daniel's Law, provides for their recovery. *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997); *see also Venuto v. Atlantis Motor Grp., LLC*, 2017 WL 4570283, at *3 (D.N.J. Oct. 13, 2017) ("reasonable attorneys' fees . . . must be counted" for "purposes of calculating the amount in controversy"). Generally, in the Third Circuit, attorneys' fees are calculated as 30 percent of the compensatory and/or punitive damages. *See, e.g., Ciccone v. Progressive Specialty Ins. Co*., 2020 WL 7319777, at *4 (M.D. Pa. Dec. 11, 2020) (including attorneys' fees of 30 percent); *Rodriguez v. Burlington Cnty. Corr. Dept*., 2015 WL 790521, at *2 (D.N.J. Feb. 25, 2015) (same). As outlined above, the Complaint plausibly alleges compensatory damages and punitive damages that already exceed the $75,000 threshold for each Individual

Plaintiff, but the request for attorneys' fees increases each of those amounts by approximately 30 percent for purposes of calculating the amount in controversy.

32.   Courts also consider the value of the interest sought to be protected by injunctive relief. *Hunter v. Greenwood Tr. Co.*, 856 F. Supp. 207, 219 (D.N.J. 1992) (citing *Spock v. David*, 469 F.2d 1047, 1052 (3d Cir. 1972)); *In re Corestates Tr. Fee Litig.*, 39 F.3d 61, 65 (3d Cir. 1994) ("[i]n injunctive actions, it is settled that the amount in controversy is measured . . . by the value to the plaintiff to conduct his business or personal affairs free from the activity sought to be enjoined"). The Individual Plaintiffs seek broad injunctive relief to protect their physical safety and their freedom from threatening communications. *See* Compl. ¶¶ 15-22. While PDL rejects any allegation that its conduct has endangered this interest, the Complaint all but admits that the value of this interest exceeds $75,000 for each of the Individual Plaintiffs and Unidentified Covered Persons.

33.   In sum, the parties are completely diverse and the amount in controversy exceeds $75,000. Accordingly, the requirements of diversity jurisdiction are satisfied.

## ALL PROCEDURAL REQUIREMENTS ARE SATSIFIED

34.   **Removal is timely**. As noted above, PDL was served on February 22, 2024. *See* **Exhibit B**. Accordingly, this Notice of Removal is timely under 28 U.S.C. § 1446(b) because it is being filed within 30 days of service (the first business day after March 23, 2024). *See* Fed. R. Civ. P. 6(a)(1)(C); *Anderson v. State Farm Mut. Auto. Ins. Co.*, 917 F.3d 1126, 1128 n.2 (9th Cir. 2019).

35.   **Removal is to the proper court**. Because Plaintiffs' Complaint was filed in the Superior Court of New Jersey, Monmouth County, this district is the proper venue for this action

upon removal, as it encompasses the location where the Complaint is pending in state court. *See* 28 U.S.C. § 1441(a).

36. **Rule 11.** This Notice of Removal is signed under Rule 11 of the Federal Rules of Civil Procedure.

37. **All pleadings and process are attached.** Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the Summons, Complaint, Notice of Service of Process, and other pleadings are attached as **Exhibits A, B, and E**. **Exhibits A, B, and E** constitute all of the process, pleadings, and orders served on PDL to date in the state court action.

38. **Notice is being provided forthwith**. Pursuant to 28 U.S.C. § 1446(d), upon filing this Notice of Removal, the undersigned will promptly give written notice of such filing to Plaintiffs through their counsel of record and file a true and correct copy of this Notice of Removal and all documents attached with the Clerk of the Superior Court of New Jersey, Monmouth County.

**WHEREFORE**, PDL removes the above-captioned action from the Superior Court, Monmouth County and requests that further proceedings be conducted in this Court as provided by law.

Respectfully submitted,

/s/ *Ronald L. Davison*
   Ronald L. Davison


Ronald L. Davison (266481971)
Starr, Gern, Davison & Rubin, P.C.
105 Eisenhower Parkway, Suite 401
Roseland, NJ 07068-1640
Tel: 973-403-9200 Ext. 226
Fax: 973-226-0031
Email: rdavison@starrgern.com

Jacob Sommer (*pro hac vice* forthcoming)
ZwillGen PLLC
1900 M Street NW, Suite 250
Washington, DC 20036
Tel: 202-706-5205
Jake@zwillgen.com

Dated:  March 25, 2024

15

## **LOCAL CIVIL RULE 11.2 STATEMENT**

Pursuant to Local Rule 11.2, the undersigned counsel, on behalf of Defendant, People Data Labs, Inc., certifies that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding, except the state-court action removed by this Notice: Case No. MON L-000515-24 in the Superior Court of New Jersey, Law Division, Monmouth County.

Dated:  March 25, 2024                           /s/ Ronald L. Davison
                                                                  Ronald L. Davison

                                                                  *Attorney for People Data Labs, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 25, 2024, the foregoing was filed electronically. Notice of this filing will be sent to the below listed attorneys of record by operation of the Court's electronic filing system, and via e-mail. The parties may access this filing through the Court's system.

**GENOVA BURNS LLC**
Rajiv D. Parikh (032462005)
Kathleen Barnett Einhorn (040161992)
494 Broad Street
Newark, New Jersey 07102
Tel.: (973) 533-0777
rparikh@genovaburns.com
keinhorn@genovaburns.com

**MORGAN & MORGAN**
John A. Yanchunis
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com

/s/ *Ronald L. Davison*
    Ronald L. Davison